IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| B. C. | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:20-cv-481-CHW |
| | : | |
| **COMMISSIONER OF** | : | Social Security Appeal |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This is a review pursuant to 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security denying Plaintiff B.C.'s application for disability insurance benefits. The parties consented to have a United States Magistrate Judge conduct proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. Because substantial evidence supports the ALJ's decision to discount, in part, the opinion of Dr. Abdul Qadir, and because the record supports the ALJ's RFC assessment, it is **ORDERED** that the Commissioner's final decision is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for Title II disability benefits in July 2018, with an alleged disability date of August 19, 2017. (R. 35). Plaintiff claimed disability due to possible epilepsy as well as anxiety related disorders. (R. 87). After Plaintiff's disability application was denied initially and on reconsideration at the state agency level of review (1A–4A), Plaintiff requested further review before an administrative law judge (ALJ).

1

At a hearing before the ALJ in May 2020, Plaintiff explained that she was involved in an automobile accident in May 2017, and thereafter began to suffer from seizures and migraine headaches. (R. 41–42). The record reveals both normal and abnormal EEG studies (R. 326, 426), and the etiology of Plaintiff's symptoms is not entirely clear. Nevertheless, based on her review of the available medical record, the ALJ determined that Plaintiff's symptoms would not preclude the performance of a modified range of simple, medium work. Hence, the ALJ ruled that Plaintiff was not disabled, and the Appeals Council declined to conduct further review.

Plaintiff now seeks judicial review of the Commissioner's decision based on the argument that the ALJ erred in discounting the opinion of Dr. Abdul Qadir, a treating neurologist. As discussed below, the ALJ did not err in concluding that some of the limitations proposed by Dr. Qadir in a September 2019 pain form (Ex. 10F) are not supported by Dr. Qadir's own treatment notes. The ALJ further did not err by crediting the opinion of Dr. Donald S. Meck, Ph.D., a consultative psychological examiner whose opinion indicates that Plaintiff can perform simple work despite mild limitations in concentration. Accordingly, because substantial evidence supports the ALJ's findings, the Commissioner's final decision in Plaintiff's case is affirmed.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the

Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

In March 2017, Plaintiff suffered a seizure while at work and was transported to a hospital by ambulance. (R. 394). Later that month, Plaintiff was referred to Dr. Abdul Qadir for treatment relating to the onset of seizures. (R. 396, 299). At an appointment with Dr. Qadir in April 2017, Plaintiff reported "no recurrence of any spells," and imaging studies revealed "unremarkable" findings in the brain and a "normal" cervical spine. (R. 302). The record indicates that Plaintiff suffered from another seizure in January 2018, for which Dr. Qadir prescribed Keppra. (R. 304). That same month, an EEG study revealed abnormal results "due to paroxysmal activity arising

3

from [the] right temporal leads." (R. 326). Plaintiff then reported suffering from three further seizures at a February 2018 follow-up appointment, whereupon Dr. Qadir diagnosed Plaintiff with "generalized epilepsy and epileptic syndromes." (R. 309–10).

At subsequent appointments with Dr. Qadir in April, June, and July of 2018, however, Plaintiff reported no recurrence of full seizure spells, although she did report an episode of slurred speech along with some minor episodes of muscle twitching or jerking in, for example, the eyelids. (R. 312–18). Updated medical imaging studies revealed little of note. (R. 321–27, 352–54). In September 2018, Plaintiff reported an episode involving a "spasm in her arms" that "lasted for maybe a couple of minutes," which led Dr. Qadir to issue a new prescription for Klonopin. (R. 363–64). In November 2018, Plaintiff reported "no recurrence of seizures" but did report suffering from "at least 10 or 15" migraines in the period of a month. (R. 366). In February 2019, Plaintiff reported some recurrent twitching, along with a 30-second episode of teeth clenching in which she "did not lose consciousness." (R. 398). Plaintiff also reported that her "headaches have improved," in that they were occurring only "maybe once or twice week," and they were "not that severe." (R. 398).

During this period, Plaintiff twice met with Dr. Donald S. Meck, Ph.D., for psychological evaluations conducted in October and November of 2018. (Exs. 3F, 5F). During the October evaluation, Dr. Meck found that Plaintiff had an "unlimited" ability to understand and remember simple instructions, "mild" deficiencies in concentration with an "adequate" ability to sustain concentration so as to permit the timely completion of tasks, an uncompromised ability to cope with stress, an uncompromised ability to get along with others, and no restriction in her daily activities because of depression. (R. 360). Plaintiff did, however, report limitations associated with

her seizures. Specifically, Plaintiff informed Dr. Meck that "they took my driver['s] license away so I can't drive until I am seizure free for six months." (R. 360).

In his subsequent November 2018 report, Dr. Meck documented Plaintiff's results on a series of cognitive tests. Dr. Meck noted that Plaintiff's results on the WAIS-IV "cannot easily be summarized because her verbal reasoning abilities," rated at the ninety-first percentile, were "much better developed than her nonverbal reasoning abilities," rated at the sixty-ninth percentile. (R. 373). Dr. Meck diagnosed Plaintiff with an "adjustment disorder with mixed anxiety and depressed mood secondary to seizures and migraines," and a "mild neurocognitive disorder due to traumatic brain injury" stemming from a prior motor vehicle accident. (R. 374). Finally, Dr. Meck noted that Plaintiff's results on the Victoria Symptom Validity Test or VSVT were indicative of possible malingering. (R. 372–73, 375).

At a May 2019 follow-up appointment with Dr. Qadir, Plaintiff reported that "in March during St. Patrick's Day, she was in a party and she drank a couple of glasses and subsequent to that, she had four seizures." (R. 411). Plaintiff also reported suffering from continuing headaches "three times per week" despite Dr. Qadir's prior attempts to control Plaintiff's migraines with medication. (R. 411). At the May 2019 appointment, Dr. Qadir prescribed the new medication Pamelor, along with an Aimovig auto-injector. (R. 413). Subsequently, during an August 2019 appointment, Plaintiff reported a "history of seizures and headaches since last visit," as well as headaches that sometimes were so "bad that she has to go and lie down." (R. 418). Based on Plaintiff's report, Dr. Qadir issued a further prescription for Depakote, (R. 419), which Plaintiff quickly ceased to take due to nausea. (R. 448).

In September 2019, Dr. Qadir completed a "clinical assessment of pain" form in which he indicated that Plaintiff would likely miss more than four days of work per month due to her

migraines and seizures; that Plaintiff's pain and medication-induced drowsiness would be severely distracting; and that functional tasks like sitting, walking, and moving the extremities would increase her pain, resulting in required bed rest. (R. 422). Dr. Qadir also stated that Plaintiff could stand or walk for only two hours during an eight-hour workday, that she could sit for eight hours during an eight-hour workday, that Plaintiff could occasionally lift up to twenty pounds of weight, and that Plaintiff could frequently lift up to ten pounds of weight. (R. 423).

In October 2019, another EEG study showed normal results. (R. 426). That same month, Plaintiff also reported that her "headaches are doing better and she thinks the Aimovig seems to be helping," although Plaintiff continued to report nocturnal myoclonic jerking. (R. 445). The record indicates that Dr. Qadir increased Plaintiff's Topamax dosage to 150 mg, but in January 2020, Plaintiff reported continued "nocturnal spells/seizures," along with possible staring spells. (R. 451–53).

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since at least August 19, 2017, her alleged onset date. (R. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: "[s]eizure disorder, migraine headaches, anxiety disorder, depressive disorder, [and] mild neurocognitive disorder." (R. 17).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform medium work with the following exceptions:

> She cannot climb ladders, ropes, or scaffolds and she should avoid all exposure to hazards including moving machinery and unprotected heights. The claimant can perform no commercial driving and her work environment should have a noise level of three or less. She can sustain concentration, attention, persistence and pace for simple and routine, repetitive tasks for two hour increments throughout an eight hour day. The claimant can tolerate no more than incidental public contact and occasional contact with co-workers and supervisors in a low demand social setting. She needs a stable work setting where changes are introduced slowly. The claimant should not perform work requiring fast-paced production standards or otherwise work in similar stressful environments.
>
> (R. 19)

Based on this RFC, the ALJ determined, at step four, that Plaintiff was unable to return to her past relevant work as a cook, host, waitress, barber, or hair styler. (R. 22). At step five, the ALJ concluded that Plaintiff could adjust to the requirements of other work, including the representative occupations of linen room attendant, counter supply worker, and laundry worker. (R. 23–24). Accordingly, based on this step-five finding, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises only one argument in this appeal: that the ALJ erred by discounting, in part, the opinion of Dr. Abdul Qadir, a neurologist who provided Plaintiff with long-term care for both her seizures and her migraines. Because substantial evidence supports the ALJ's decision partly to discount Dr. Qadir's opinion, the Commissioner's final decision is affirmed.

On review of the medical evidence, the ALJ gave little weight — found "unpersuasive" — a September 2019 clinical assessment of pain form in which Dr. Qadir indicated that Plaintiff would likely miss more than four days of work per month due to her migraines and seizures and that Plaintiff's pain and medication-induced drowsiness would be severely distracting. (R. 21,

422–23). The ALJ provided at least three bases for this evaluation. First, the ALJ noted that Dr. Qadir's pain-form findings are not consistent with Dr. Qadir's own treatment notes. Second, the ALJ explained that Dr. Qadir seemingly relied upon Plaintiff's own reports, and the ALJ elsewhere found that Plaintiff's testimony was not credible. Third and finally, the ALJ gave great weight to — found "persuasive" — the opinion of Dr. Donald Meck, Ph.D., a consultative psychological examiner who met with Plaintiff twice. The record supports each of the ALJ's stated basis for discounting Dr. Qadir's opinion.

Regarding Dr. Qadir's treatment notes, longstanding precedent of the Eleventh Circuit Court of Appeals explains that a treating physician's opinion may be discounted when that opinion conflicts "with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Dr. Qadir's treatment notes do not support the degree of limitations that he proposed in his September 2019 pain form. Although the record shows that Plaintiff has a history of suffering from seizures beginning in March 2017, Plaintiff's treatment with Keppra beginning in January 2018 alleviated the occurrence of grand mal seizures. (R. 304) ("start Keppra"). Thereafter, the record indicates that Plaintiff continued to suffer primarily from occasional myoclonic seizures at night, but nothing in Dr. Qadir's treatment notes suggests that either a loss of sleep due to these nighttime seizures or any medication-induced drowsiness would impair Plaintiff's ability to perform basic functions during the day. In her testimony before the ALJ, Plaintiff indicated that her days were spent doing "[n]ormal things" like chores and talking on the phone (during the height of the Covid-19 pandemic) with family members. (R. 57–58).

Regarding headaches, Dr. Qadir's notes similarly indicate that Plaintiff benefited from treatment. Specifically, Dr. Qadir's treatment notes show that Plaintiff's migraines decreased in both severity and in frequency from a rate of "at least 10 or 15" a month (R. 366), to "maybe once

8

or twice a week, not that severe." (R. 398). Plaintiff reported still further improvement in October 2019, when she began to treat with Aimovig. (R. 445) ("headaches are doing better and she thinks the Aimovig seems to be helping"). Given these findings of improvement noted by Dr. Qadir in his treatment notes, the ALJ did not err by concluding that the restrictions which Dr. Qadir proposed in his pain form, and particularly the amount of anticipated monthly absences that Dr. Qadir proposed, were excessive.

  Second, to the extent Dr. Qadir's treatment notes suggest that Plaintiff was severely restricted in her functional ability, those notes appear to rely on Plaintiff's own reports of her symptoms. For example, Dr. Qadir's notes mention, on only one occasion in August of 2019, that Plaintiff reported headaches that were "[s]ometimes … very bad [so] that she has to go and lie down." (R. 418, 427). The ALJ discounted Plaintiff's credibility, however, and substantial evidence supports the ALJ's decision in this regard. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) ("credibility determinations are the province of the ALJ"). As the ALJ put it, "[d]espite alleging almost daily incapacitating headaches at [her administrative] hearing, the claimant … received only episodic, conservative treatment." (R. 21). The ALJ's reading of the record, which shows that Plaintiff treated with Dr. Qadir on only an every-other-month basis, and that Plaintiff treated with over-the-counter medications like Tylenol when she suffered from breakthrough headaches, is reasonable. (R. 366). Accordingly, the ALJ's rejection of Plaintiff's account of her own symptoms constitutes another ground for partly discounting Dr. Qadir's opinion.

  Third and finally, the ALJ chose to credit (R. 20) the opinion of Dr. Donald S. Meck, Ph.D., a consultative examiner who met with Plaintiff on two occasions, and Dr. Meck's findings provide substantial evidence in support of the ALJ's RFC assessment. In contrast to Dr. Qadir, Dr. Meck

found that Plaintiff had an ability to sustain concentration adequate to permit the timely completion of tasks, notwithstanding Plaintiff's "mild" limitations in concentration. (R. 360). Dr. Meck also found that Plaintiff's "ability to understand and remember simple instruction[s] was unlimited." (R. 360). Given these findings by Dr. Meck, the ALJ did not err in proposing an RFC that limited Plaintiff to performing "simple and routine, repetitive tasks for two hour increments." (R. 19). *See Winschel v. Comm'r*, 631 F.3d 1176, 1180–81 (11th Cir. 2011). Put more succinctly, Dr. Meck's opinion supports the ALJ's RFC assessment.

In summary, because the ALJ did not err in discounting Dr. Qadir's September 2019 pain form, and because substantial evidence supports the ALJ's RFC finding, the Commissioner's decision is affirmed.

## **CONCLUSION**

After a careful review of the record, and for the reasons discussed herein, the Commissioner's final decision in Plaintiff's case is **AFFIRMED**.

**SO ORDERED**, this 18th day of August, 2022.

                        s/ Charles H. Weigle
                        Charles H. Weigle
                        United States Magistrate Judge